Case 6:19-cr-00145   Document 52   Filed on 10/06/20 in TXSD   Page 1 of 7

United States District Court
Southern District of Texas
**ENTERED**
October 08, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
|   Plaintiff, § | |
| § | |
| v. § | CRIMINAL NO. 6:19-145 |
| § | |
| ROBERT SAENZ, § | |
|   Defendant. § | |

**MEMORANDUM OPINION & ORDER**

Defendant Robert Saenz is charged with conspiracy to possess with intent to distribute cocaine. Now pending is Defendant's motion to suppress (D.E. 22), to which the Government responded (D.E. 24). Two evidentiary hearings were held (6/2/2020 Hrg. Tr., D.E. 37; 7/8/2020 Hrg. Tr., D.E. 42), after which Defendant and the Government filed supplemental memoranda (D.E. 39, 40).

**I. Factual Background**

On July 31, 2019, Goliad County Sheriff's Deputy Mark Williams and Victoria Police Department Officer Troy Gilliam were patrolling U.S. Highway 59 near Goliad, Texas, as part of a joint task force targeting drug interdiction. They observed Defendant drive by with an iPad mounted on his windshield and pulled him over, believing it violated Texas Transportation Code § 547.613.

Officer Gilliam approached the passenger side of the vehicle and informed Defendant of the reason for the stop. He explained almost immediately that he was not going to give Defendant a citation for the alleged traffic code violation, but instead wanted to keep him informed of the law. After Defendant removed the iPad from the windshield, Officer Gilliam asked him to step out of the vehicle and requested his driver's license. Defendant admitted his license was expired and showed Officer Gilliam paperwork that was purported to be the renewal.

1

Officer Gilliam gave Defendant's license to Deputy Williams to run a check for validity and outstanding warrants. Because there was a dedicated dispatcher serving the task force, the return came back within 40 to 45 seconds. The dispatcher reported that Defendant's license was valid, there were no outstanding warrants for his arrest, and the car was not stolen; however, Deputy Williams chose not to tell Officer Gilliam he had received an "all clear."

Meanwhile, Officer Gilliam questioned Defendant about his travel plans. When asked where he was coming from, Defendant responded that he had been in Corpus Christi for a tarot card reading and visited his aunt, and he was on his way back to Yoakum. He explained that the purpose of the tarot reading was because he was hoping to open a business in the future. Then he said something about beer and asked Officer Gilliam if he drank. He also offered that he had spent 11 years in the penitentiary. Officer Gilliam testified that Defendant seemed nervous, volunteered too much information, and attempted to redirect the officer's attention, which he found suspicious.

Deputy Williams testified that he also found Defendant's story about the tarot card reading to be questionable and that taking Highway 59 from Corpus Christi to Yoakum was a longer route and "out of the norm." Even though Deputy Williams always informed Officer Gilliam immediately when a check came back clear, he decided not to in this instance because of these "red flags" and because "there's a system of questions that we ask on every traffic stop and he hadn't gotten to that point yet. So I was going to let him finish his conversation." 7/8/2020 Hrg. Tr. at 13:23-25.

Officer Gilliam then began that "system of questions," asking Defendant if he had drugs, guns, or large sums of money in the car, and listing several narcotics by name. Defendant denied the presence of each. Approximately five minutes after the stop was initiated, Officer Gilliam requested permission to search the vehicle. After Defendant denied consent, Officer Gilliam

2

informed him that he was going to get his K-9 unit to walk around the vehicle for a sniff, and that if Defendant had something in the car, it would be better to say something now. Defendant asked for permission to call his wife, explaining that he had a "joint" (marijuana cigarette) in the car and that someone would need to get his minor son, who was sitting in the back seat. After more questioning, Defendant admitted that there was also cocaine in his vehicle. The officers then searched the vehicle, found the cocaine, and arrested Defendant.

## II. Defendant's Motion to Suppress

Defendant moves to suppress all evidence seized during the search of his vehicle, any statements he made during his unlawful detention or following his arrest, and any testimony by other persons related to said evidence and statements, on the grounds that: (1) the stop was not justified at its inception; (2) law enforcement unlawfully prolonged the stop by asking questions unrelated to any traffic violation after the computer check had come back clean and after Defendant had already denied consent to search; and (3) Defendant's statements that he had marijuana and cocaine in the vehicle could not give rise to probable cause to search the vehicle because they were made while he was being unlawfully detained.

## III. Legal Standard

Routine traffic stops, being closer in nature to investigatory detentions rather than a full blown arrest, are governed by the principles set out in *Terry v. Ohio*, 392 U.S. 1 (1968). *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). The legality of a police investigatory stop under *Terry* is assessed in two parts: (1) whether the officer's action was justified at its inception, and (2) whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop. *Terry*, 392 U.S. at 19–20; *Brigham*, 382 F.3d at 506.

During the stop, the officer may examine driver's licenses and vehicle registrations and run computer checks as part of the investigation of the circumstances that originally caused the traffic stop. *United States v. Pack*, 612 F.3d 341, 350 (5th Cir.), *opinion modified on denial of reh'g*, 622 F.3d 383 (5th Cir. 2010). The officer may also ask about the purpose and itinerary of the occupant's trip as part of this investigation. *Id.* An officer may ask questions on subjects unrelated to the circumstances that caused the stop, so long as the unrelated questions do not extend the duration of the stop. *Id.* However, once an officer's initial suspicions "have been verified or dispelled, the detention must end unless there is additional reasonable suspicion supported by articulable facts." *United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006).

"An investigation into the initial cause of a stop finishes ordinarily when 'computer checks come back clean.'" *United States v. Madrigal*, 626 F. App'x 448 (5th Cir. 2015) (unpublished) (citing *United States v. Brigham*, 382 F.3d 500, 508 (5th Cir. 2004)). "Once an investigation into the initial cause of a stop finishes, reasonable suspicion disappears—unless reasonable suspicion of another crime arose." *Id.* (citing *United States v. Jenson*, 462 F.3d 399, 404 9 (5th Cir. 2006); *Pack*, 612 F.3d at 350). The Supreme Court has further held that, absent reasonable suspicion, police may not extend an otherwise-completed traffic stop, in which a ticket or warning has been issued, in order to conduct an unrelated search. *Rodriguez v. United States*, 575 U.S. 348, 350 (2015) (dog sniff performed after officer issued written warning for traffic violation held unlawful).

## IV. Analysis

At the close of the second hearing, the Court ruled from the bench that the initial stop was valid. 7/8/2020 Hrg. Tr. at 54:16–55:1. As the Court previously explained, the issue here is what happened after Officer Gilliam took Defendant out of the car and whether he had reasonable suspicion to continue questioning Defendant after the reason for the stop had ended.

Defendant maintains that because Officer Gilliam stated from the outset that he was not going to issue a citation, the only thing left to investigate was whether Defendant's license was valid or if he had any warrants. It was only after the "all clear" confirmation from the computer check that Officer Gilliam escalated his interrogation regarding the possibility of illegal narcotics in the car, running down a laundry list of drugs. Defendant denied the presence of drugs and denied consent to search, only admitting he had marijuana in the car after Officer Gilliam threatened to bring out his drug K-9 for a sniff. Officer Gilliam and Deputy Williams both conceded that they did not have probable cause to search the vehicle until Defendant admitted he possessed marijuana. According to Defendant, because his statement regarding the marijuana was made while he was being illegally detained, it could not give rise to probable cause to search his vehicle.

The Government attempts to distinguish the Supreme Court's *Rodriguez* decision by arguing that the length of Defendant's entire detention was only 5 minutes and 33 seconds, and therefore reasonable. According to the Government, "To suppress this stop would be to discourage the efficient and courteous officer in his daily pursuit of efficient, courteous and fast public service." D.E. 49, p. 8. The Supreme Court rejected a similar argument by the government in *Rodriguez* "that by completing all traffic-related tasks expeditiously, an officer can earn bonus time to pursue an unrelated criminal investigation." *See Rodriguez*, 575 U.S. at 357. "If an officer can complete traffic-based inquiries expeditiously, then that is the amount of time reasonably required to complete the stop's mission." *Id.* The fact that the entire stop lasted under six minutes does not render it reasonable. What matters is whether the officers had developed reasonable suspicion of criminal activity at the time the computer check came back clear.

Officer Gilliam testified that he had reasonable suspicion to continue questioning Defendant after the "all clear" based on the following "indicators": (1) "unsolicited information"

5

(Defendant responded that he went to Corpus Christi for a tarot card reading, when he was only asked where he was coming from and not what he was doing there); (2) two "convincing statements" (Defendant added that he also visited his aunt while in Corpus Christi and volunteered that he had gone to the penitentiary for 11 years but had done his time); (3) "redirection" (Defendant asked Officer Gilliam about beer); and (4) travel itinerary (Defendant took a longer route through small towns that would slow him down). 7/8/2020 Hrg. Tr. at 30:12-22.

The Court finds none of these "indicators" is sufficient to give rise to reasonable suspicion of criminal activity. While "inconsistent and untruthful statements can be a factor in developing reasonable suspicion during a traffic stop," neither Officer Gilliam nor Deputy Williams testified that Defendant's answers were inconsistent or untruthful, just unsolicited. *See United States v. Berry*, 664 F. App'x 413, 419 (5th Cir. 2016), *as revised* (Dec. 14, 2016). Moreover, Defendant's travel route—which was only nine miles longer than the route suggested by Officer Gilliam and Deputy Williams—"added little or no weight to suspicion."[1] *See Madrigal*, 626 F. App'x at 452 (40-mile difference between routes not suspicious). Finally, Officer Gilliam acknowledged that his primary source of suspicion was Defendant's body language while he responded to questions about narcotics in the vehicle. While watching a video of the traffic stop, Officer Gilliam testified:

> Right here. This is where I'm starting to get interested.
>
> Notice now we see how much physical reaction we have as compared to, what, 20 seconds ago he was closed off, arms in front. This is the narcotics, asking if he has anything illegal in the car. How many times has he moved his arms at that point?

---

1. According to Google Maps, the route Defendant took, from Corpus Christi to Yoakum via Beeville and Goliad, is 138 miles and takes 2 hours, 18 minutes to drive. The shorter route passing through Refugio and around Victoria is 127 miles and takes 2 hours to drive.

6

> Prior to this, when I baselined him, he's like this, closed off. So once I saw this, it was something else.

7/8/2020 Hrg. Tr. at 33:8-15. Officer Gilliam conceded that this did not occur until after the "all clear." *Id.* at 33:19-21.

The Court finds Officer Gilliam and Deputy Williams had not developed reasonable suspicion to justify extending the stop after the computer check came back clean and the purpose of the stop was complete. Defendant's continued detention and interrogation after that point violated his Fourth Amendment rights, as did the warrantless search of his vehicle and his resulting arrest. Under the exclusionary rule, which "was adopted to effectuate the Fourth Amendment right of all citizens, . . . evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347 (1974). All evidence obtained as a result of Defendant's unlawful detention must therefore be suppressed.

## V. Conclusion

For the foregoing reasons, Defendant's motion to suppress (D.E. 22) is **GRANTED**.

It is so **ORDERED** this 14th day of September, 2020.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE